1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

THE ESTATE OF CARLOS ESCOBAR
MEJIA, et al.,

Plaintiffs,

v.

GREGORY ARCHAMBEAULT, et al.,

Defendants.

Case No.:  20-cv-2454-MMA (KSC)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

[Doc. No. 17]

The Estate of Carlos Escobar Mejia ("Mejia"), by and through its successor in interest Rosa Escobar, ("the Estate") as well as Rosa Escobar ("Rosa"), Maribel Escobar ("Maribel"), and Juan Antonio Escobar ("Juan")[1] bring this action against Defendants Gregory Archambeault ("Archambeault"), James Dobson ("Dobson"), CoreCivic of Tennessee LLC ("CoreCivic"), Joseph Roemmich ("Roemmich"), Christopher LaRose ("LaRose"), Does 1–50, and Roes 1–50. *See* Doc. No. 15 ("FAC"). Plaintiffs bring seven causes of action following Mejia's death while in federal custody: (1) negligence

---

[1] Rosa, Mejia's sister, brings this action on behalf of the Estate. *See* Doc. No. 15 ¶ 4; Doc. No. 15-1 at Ex. 1 ("Rosa Decl.") ¶¶ 2–3. Rosa, Maribel, and Juan bring claims as individuals. FAC ¶ 4. For the sake of convenience, the Court refers to Rosa, Maribel, and Juan as the "Individual Plaintiffs," and Rosa, Maribel, Juan, and the Estate collectively as "Plaintiffs."

against CoreCivic, LaRose, Roemmich, and Does 1–50; (2) intentional infliction of emotional distress against CoreCivic, LaRose, Roemmich, and Does 1–50; (3) wrongful death under California Code of Civil Procedure § 377.60 against CoreCivic, LaRose, Roemmich, and Does 1–50; (4) violation of California's Bane Act, California Civil Code § 52.1, against CoreCivic, LaRose, Roemmich, and Does 1–50; (5) violation of California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51, against CoreCivic; (6) violation of the Rehabilitation Act, 29 U.S.C. § 794(a), against CoreCivic; and (7) violation of Mejia's constitutional right to adequate medical care against Archambeault and Dobson pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See id.* ¶¶ 129–86. [2]

Defendants CoreCivic, LaRose, and Roemmich[3] move to dismiss each cause of action against them pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 17. Plaintiffs filed an opposition, to which Defendants replied. *See* Doc. Nos. 23, 24. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 25. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I. BACKGROUND

This action arises from Mejia's death on May 6, 2020, while confined at the Otay Mesa Detention Center ("OMDC") in San Diego, California. *See* FAC at 2. Broadly, Plaintiffs allege that Defendants failed to take steps to mitigate the spread of COVID-19 throughout OMDC and failed to ensure that Mejia was provided with adequate medical care given his medical disabilities, and that these failures ultimately resulted in Mejia's death. *See id.* ¶¶ 58, 113.

---

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.
[3] As the only moving parties, the Court refers to CoreCivic, LaRose, and Roemmich as "Defendants." The Court notes that, based on the present record, it appears that Defendants Archambeault and Dobson have not yet appeared in this case or been served with the FAC.

OMDC is a contract detention facility and immigration detention center operated by CoreCivic. *See id.* ¶ 31. U.S. Immigration and Customs Enforcement ("ICE") held Mejia in custody from January 10, 2020, until his death on May 6, 2020, while waiting to appear before an immigration judge. *Id.* ¶¶ 25, 27. Plaintiffs allege that there was an apparent risk of COVID-19 outbreaks given the proximity required of both employees and inmates as well as an influx of COVID-19 cases in San Diego. *See id.* ¶¶ 57, 59. Despite this risk, Plaintiffs aver that CoreCivic failed to "provide any protocols or directions related to decreasing the risk of transmission in its facility, nor directions on how to practice social distancing in the facility, nor did it implement any steps to properly disinfect and clean or provide protective gear in response to the COVID-19 pandemic." *Id.* ¶ 88. According to Plaintiffs, at the time of Mejia's death, OMDC "had one of the highest numbers of cases of the novel Coronavirus . . . of any immigration detention facility in the country." *Id.* ¶ 65.

Plaintiffs allege that OMDC staff were prohibited or discouraged from following CDC guidelines on COVID-19 and CoreCivic's own public COVID-19 guidelines. *Id.* ¶ 68, 70, 92. Plaintiffs allege:

> On March 12, 2020, CoreCivic posted on its website, "Consistent with CDC recommendations, personal protective equipment (PPE) such as face masks are allowed to be worn by staff and those in our care within the facility. Disposable gloves are readily available for staff conducting searches and handling property. Staff working at the front lobby screening site wear PPE." This statement was false.

*Id.* ¶ 68. Plaintiffs assert CoreCivic did "not provide[] gloves or masks to its entire staff" and "expressly prohibited its employees from wearing masks in the housing units and other areas of the facility." *Id.* ¶ 70. For example, "Defendant Roemmich told staff that wearing masks are prohibited unless a sign is posted, and that if they refused to take off masks, they would be 'sent home on your own dime.'" *Id.* ¶ 92. When detention officers that worked in the kitchen "brought up the fact that when they hand food trays to

detainees, they are face to face, within approximately one foot of each other[,]" a Doe defendant "responded that they could absolutely not wear a face mask because it would intimidate detainees because the detainees do not have masks." *Id.* ¶ 84.

Plaintiffs further allege that there were regular shortages of sanitation supplies at OMDC. *See id.* ¶¶ 46, 47. Detainees were tasked with cleaning the facility, but detainees were not trained on proper cleaning procedures. *Id.* ¶¶ 45, 73. CoreCivic also "did not provide any cleaning sanitizer or disinfectant wipes to staff" and most sanitizer dispensers were empty. *Id.* ¶ 74. In daily briefing sessions, employees' "social distancing and sanitation concerns" were met with "'we understand that, but do your job,' or words to that effect." *Id.* ¶¶ 82–83. Social distancing among detainees was also "nearly impossible" because most housing units exceeded 100 people, bunk beds were "no more than four feet from one another," and meal lines and other lines made six-foot spacing impossible. *Id.* ¶ 89.

CoreCivic did not take the temperature or screen for COVID-19 symptoms of people before they entered OTMD "until after late March 2020." *Id.* ¶ 90. When it did start taking temperatures, it did so in an enclosed lobby space. *Id.* ¶ 91.

Around March 31, 2020, an employee tested positive for COVID-19. *Id.* ¶ 93. On April 1, 2020, an officer spoke with LaRose—the warden—after hearing about the prohibition on face masks and wanting to wear a mask and gloves. *Id.* ¶ 96. LaRose responded that "[y]ou can't wear the mask because we don't want to scare the employees and we don't want to scare the inmates and detainees." *Id.*

Plaintiffs explain that Mejia was vulnerable to COVID-19 because of his underlying medical conditions: diabetes, high blood pressure, and heart problems. *Id.* ¶¶ 28–29. Around April 17, 2020, Mejia began showing COVID-19 symptoms. *Id.* ¶ 107. He "was taken to a designated area with other detainees diagnosed with COVID-19." *Id.* ¶ 108. Staff gave Mejia ibuprofen for his symptoms. *Id.* ¶¶ 110, 112. Mejia received no response to his submission of a sick card, "which in theory would set in motion a formal medical response from the facility[,]" until he was "sent to Paradise

Valley Hospital in National City and placed on a ventilator" on April 24, 2020. *Id.* ¶¶ 111, 114. At the time, he was "gasping for air and dying." *Id.* ¶ 114. The hospital gave [Mejia] a blood transfusion." *Id.*

ICE was ordered "to review cases of medically vulnerable persons for release." *Id.* ¶ 116. Mejia's name was on the list, but he was already in extremis. *Id.* At a hearing on May 4, 2020, "the government admitted it was probably too late to save [Mejia]." *Id.* ¶ 117. Mejia died on May 6, 2020. *Id.* ¶ 118.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.

1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUEST FOR JUDICIAL NOTICE

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). A court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). However, the Court cannot rely on information outside of the complaint to "short-circuit the resolution of a well-pleaded claim." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829–30 (N.D. Cal. 2019).

As an initial matter, Defendants ask the Court to take judicial notice of the fact that ICE Health Services Corp ("IHSC"), and not CoreCivic, "staffed the medical unit at OMDC and provided all medical services to ICE immigration detainees at OMDC." Doc. No. 17 at 12. As support for this argument, Defendants provide the staffing contract between CoreCivic and ICE. *See id.*

CoreCivic's staffing agreement with ICE is not appropriate for judicial notice. The provision of services at OMDC is not a fact "generally known within the territorial jurisdiction of this court." *See* Fed. R. Evid. 201(b). Nor is the provision of services at OMDC a fact "capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned." *See id.* As Plaintiffs note, Defendants have provided only an excerpt of the contract without clear reference to a source or other indicia of accuracy. *See* Doc. No. 23 at 14. Accordingly, the source of this document can reasonably be questioned.

Further, taking judicial notice of the staffing agreement would be inconsistent with the Ninth Circuit's reasoning in *Khoja v. Orexigen Therapeutics*. *See* 899 F.3d at 1002. The Court cannot rely on information outside of the complaint to "short-circuit the resolution of a well-pleaded claim." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d at 829–30. In *Khoja*, the Ninth Circuit cautioned against the use of judicial notice to allow defendants to "use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." 899 F.3d at 1002. Plaintiffs plainly allege that, contrary to Defendants' assertion, Defendants were responsible for safeguarding the health and safety of detainees. FAC ¶ 130 ("Defendants had a duty to act with care and prudence to safeguard the health and safety of detainees.")

The Court therefore **DENIES** Defendants' request to take judicial notice of the fact that IHSC staffed the medical unit at OMDC and provided all medical services to detainees. The Court looks only to the face of the FAC in determining the legal sufficiency of the claims made in the complaint. *See Warren*, 328 F.3d at 1141 n.5.

## IV. DISCUSSION

### A.   Initial Matters

Defendants ask the Court to dismiss Plaintiffs' second cause of action for intentional infliction of emotional distress. *See* Doc. No. 17 at 13. Plaintiffs acquiesce to dismissal of this claim. Doc. No. 23 at 31 ("Plaintiffs agree to dismiss the second cause of action for intentional infliction of emotional distress"). Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' second claim for intentional infliction of emotional distress.

### B.   Standing

Defendants seek to dismiss several claims based on standing issues. *See* Doc. No.

17 at 13–17.  Accordingly, the Court addresses the Estate's and Individual Plaintiffs' standing in turn.

### 1.   Estate Standing

Defendants argue that the Estate lacks standing to bring a wrongful death claim (Claim 3).  *See id.* at 29.  In their opposition to the motion to dismiss, Plaintiffs concede "that inadvertent errors appear in the captions below each cause of action.  For example, decedent is not asserting a wrongful death claim under CCP § 377.60 in the third cause of action."  Doc. No. 23 at 21.

As both parties now correctly acknowledge, a wrongful death claim can only be brought by a decedent's heirs, not a decedent's estate.  *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (Cal. Ct. App. 2006) (citation omitted) ("The wrongful death statute limits the right of recovery to a class of persons who, because of their relation to the deceased, are presumed to be injured by his or her death and bars claims by persons who are not in the chain of intestate succession.").  Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Claim 3 to the extent the claim is brought by the Estate without leave to amend.  *See Knappenberger*, 566 F.3d at 942.  Only Individual Plaintiffs have standing to bring Claim 3.

### 2.   Individual Standing

Similarly, Defendants argue that Individual Plaintiffs do not have standing to bring claims for negligence (Claim 1), violation of the Unruh Act (Claim 5), and violation of the Rehabilitation Act (Claim 6).  *See* Doc. No. 17 at 14.  Plaintiffs appear to agree, acknowledging that "inadvertent errors appear in the captions below each cause of action."  *See* Doc. No. 23 at 21.[4]

---

[4] The Court notes that these pleading errors are not limited to the captions but appear, at times, to permeate the substance of the Complaint.  For example, in Paragraph 148 of the FAC, Plaintiffs allege only that Maribel and Rosa suffered damages from Mejia's wrongful death and are silent on any damage to Juan.  *See* FAC ¶ 148.  In Paragraph 162 of the FAC, Plaintiffs allege that "Carlos Escobar as well as plaintiffs" were injured and entitled to damages.  *Id.* ¶ 162.  Nevertheless, these errors do not deprive Defendants of adequate notice to an extent that warrants dismissal under Rule 12(b)(6), except as

Claims 1, 5, and 6 are survival actions.  "Unlike a wrongful death cause of action, a survival cause of action is not a new cause of action that vests in heirs on the death of the decedent, but rather is a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives the event."  *Chipman v. Nelson*, No. 2:11-cv-2770-TLN-EFB PS, 2015 U.S. Dist. LEXIS 121559, at *11 (E.D. Cal. Sept. 11, 2015) (quoting *Dela Torre v. City of Salinas*, No. C-09-00626 RMW, 2010 U.S. Dist. LEXIS 97725, at *18 (N.D. Cal. Sept. 17, 2010)).  "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Cal. Code Civ. Proc. § 377.30.  Therefore, only a decedent's personal representative or successor in interest can bring these claims on behalf of the Estate.  *See id.* § 377.30.  Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Claims 1, 5, and 6 to the extent the claims are brought by Individual Plaintiffs without leave to amend.  *See Knappenberger*, 566 F.3d at 942.  Only the Estate has standing to bring Claims 1, 5, and 6.

## C.   Failure to State a Claim under Rule 12(b)(6)

Defendants raise several additional arguments challenging the plausibility of the claims brought against them.  The Court assesses these claims and the parties' arguments in turn.

### 1.   Estate Claims

As above, only a decedent's personal representative or successor in interest can bring survival claims on behalf of the Estate.  *See* Cal. Code Civ. Proc. § 377.30.  Plaintiffs state that Maribel and Juan have elected Rosa to act as the successor in interest to the Estate and ask the Court to acknowledge Rosa as the successor in interest.  *See*

---

indicated below.  *See Bell Atl. Corp.*, 550 U.S. at 555 ("[The Federal Rules of Civil Procedure] require[] only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted).

Doc. No. 23 at 21–22.  Alternatively, if the Court determines that all three Individual Plaintiffs should be named as successors in interest, Plaintiffs ask the Court to grant leave to amend and an opportunity to submit declarations by Maribel and Juan.  *Id.*

As an initial matter, Plaintiffs need not name all three siblings as successors in interest to the Estate.  A decedent's successor in interest is "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."  Cal. Civ. Proc. Code § 377.11.  As Mejia died intestate, *see* FAC ¶ 18, the "beneficiary of the decedent's estate" means, in relevant part:

> (b) . . . the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under Sections 6401 and 6402 of the Probate Code . . .

Cal. Civ. Proc. Code § 377.10.

After surveying case law regarding § 377.10, this Court has found no indication that all beneficiaries must pursue survival claims together as successors in interest.  *See Estate of Elkins v. Pelayo*, No. 1:13-CV-1483 AWI SAB, 2020 U.S. Dist. LEXIS 89857, at *15 (E.D. Cal. May 21, 2020) ("[T]he Court is unaware of any [cases] that have held that every person who is a "beneficiary" under § 377.10 must join in a survival claim as a successor in interest in order for standing requirements to be satisfied.").  As the *Pelayo* court noted, "[i]t seems likely that, if all beneficiaries must pursue survival claims together as successors in interests, that rule would have been expressly recognized before now."  *See id.* at *16.

However, the initial Rosa Declaration attached to the FAC is insufficient to establish her standing as successor in interest because it fails to satisfy all requirements of California Code of Civil Procedure § 377.32.  *See* Doc. No. 1-2.  Plaintiffs acknowledge as much, submitting an amended declaration from Rosa in support of their opposition to the instant motion to dismiss.  *See* Doc. No. 23-1.  Although Defendants concede that the

amended declaration satisfies § 377.32 and have abandoned their argument for dismissal on this basis, *see* Doc. No. 24 at 3 fn.3, the Court notes that a party cannot amend its pleadings through briefs, evidence, or exhibits filed in opposition to a motion to dismiss. *See, e.g.*, *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Accordingly, Plaintiffs must submit Rosa's amended declaration as an attachment to their next amended complaint in order to establish her entitlement to proceed as the Estate's successor in interest.

Next, Defendants argue that the Estate's survival claims (Claims 1, 4, 5, and 6) should be dismissed for failure to allege recoverable damages. *See* Doc. No. 17 at 18. California Code of Civil Procedure § 377.34 limits the remedy where an action is brought by a decedent's successor in interest. Section 377.34 states that

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

Cal. Civ. Proc. Code § 377.34. "Section 377.34 limits damages in survival actions to the victim's pre-death economic losses." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1104 (9th Cir. 2014) (citing *People v. Runyan*, 54 Cal. 4th 849, 862 (2012)). "The practical effect of § 377.34 is to reduce, and often to eliminate, compensatory damage awards for the survivors . . ." *Id.*

Beyond a lone allegation of "economic and non-economic damages" in Claim 3, which is not a claim properly brought by the Estate, Plaintiffs have not alleged any economic loss in the entirety of the FAC. *See* FAC ¶ 148. Moreover, at present, Plaintiffs have not alleged sufficient facts that would support a finding that the decedent suffered economic losses such as medical costs, property damage, or loss of wages. Accordingly, Plaintiffs fail to allege recoverable damages for Claims 1, 4, 5, and 6, and

so the Court **GRANTS** Defendants' motion and **DISMISSES** Claims 1, 4, 5, and 6. *See Knappenberger*, 566 F.3d at 942.

Next, the Court turns to Defendants' arguments challenging the claims, individually.

a. Negligence (Claim 1)

Plaintiffs' first cause of action is for negligence against Defendants and Does 1–50.[5] FAC ¶¶ 129–32. "In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. County of San Diego*, 305 P.3d 252, 255 (Cal. 2013) (citations omitted).

Plaintiffs sufficiently allege facts to state a negligence claim against Defendant CoreCivic. Plaintiffs allege that CoreCivic had a duty to safeguard the health and safety of Mejia. FAC ¶ 130. Plaintiffs provide facts that support an inference that CoreCivic breached this duty. For example, Plaintiffs state that Defendants "were repeatedly advised by numerous sources to take measures to prevent the spread of COVID-19 in its facility," *id.* ¶ 66, but that CoreCivic failed to "provide any protocols or directions related to decreasing the risk of transmission in its facility, nor directions on how to practice social distancing in the facility, nor did it implement any steps to properly disinfect and clean or provide protective gear in response to the COVID-19 pandemic." *Id.* ¶ 88. When Mejia started showing symptoms of COVID-19, he was taken to a designated area with other detainees diagnosed with COVID-19 and given ibuprofen to treat his symptoms. *Id.* ¶ 97. Mejia received no response to his submission of a sick card, "which in theory would set in motion a formal medical response from the facility[,]" until he was sent to Paradise Valley Hospital on April 24, 2020. *Id.* ¶¶ 111, 114. Finally, Plaintiffs

---

[5] The Court addresses arguments related to the Doe defendants in a separate section below. *See infra* Section IV.C.4.

causally link CoreCivic's actions to Mejia's death: "All of the actions of CoreCivic in refusing the heed the warnings of the staff and the detainees that the failure to implement a system to provide a safe environment would cause an outbreak were the direct cause of Mr. Escobar's infection and death." *Id.* ¶ 161.

Plaintiffs also sufficiently allege facts to state a negligence claim against Defendants Roemmich and LaRose. Plaintiffs allege that Defendants Roemmich and LaRose had a duty to safeguard the health and safety of Mejia. *Id.* ¶ 130. Plaintiffs provide facts that support an inference that Defendants Roemmich and LaRose breached this duty by violating CoreCivic's own stated policy regarding COVID-19:

> On March 12, 2020, CoreCivic posted on its website, "Consistent with CDC recommendations, personal protective equipment (PPE) such as face masks are allowed to be worn by staff and those in our care within the facility. Disposable gloves are readily available for staff conducting searches and handling property. Staff working at the front lobby screening site wear PPE." This statement was false.

*Id.* ¶ 68. Plaintiffs allege that Defendant Roemmich told staff that wearing masks was prohibited unless a sign was posted and that if staff refused to take off masks, they would be sent home, *id.* ¶ 92, and that he denied CoreCivic officers clean rags, stating there was "no need because the 'chemicals' were very powerful." *Id.* ¶ 85. Plaintiffs allege that Defendant LaRose told another officer that he could not wear a mask because "we don't want to scare the employees and we don't want to scare the inmates and detainees." *Id.* ¶ 96. Finally, Plaintiffs causally link Defendant Roemmich and LaRose's actions to Mejia's death, alleging that Defendants' "breach of their duty, as described herein, was a substantial factor in causing [Mejia's] death." *Id.* ¶ 131.

Accordingly, the Court finds that Plaintiffs have adequately pleaded the substantive elements of negligence against Defendants. Accordingly, the Court **DENIES** Defendants' motion to dismiss on this basis.

1

2
            b.      Unruh Act (Claim 5)

3
        Plaintiffs' fifth cause of action is for violation of the Unruh Act against CoreCivic.

4
*See* FAC ¶¶ 154–63.  Defendants argue that Plaintiffs' Unruh Act claim should be

5
dismissed because (1) OMDC is not a business establishment; (2) COVID-19 is not a

6
disability under the Unruh Act; and (3) Mejia was not denied accommodations because of

7
any alleged disability.  *See* Doc. No. 17 at 23–26.  In opposition, Plaintiffs argue that (1)

8
CoreCivic qualifies as a business establishment under California Civil Code Section 51;

9
(2) Mejia's alleged disability was not COVID-19 but diabetes, heart disease, and a foot

10
amputation, among other medical impairments; and (3) CoreCivic was required to modify

11
its universal policy on PPE, sanitation supplies, and living spaces in order to

12
accommodate Mejia's disability.  *See* Doc. No. 23 at 27.

13
        The Unruh Act provides that "[a]ll persons within the jurisdiction of [California]

14
are free and equal, and no matter what their . . . disability[ or] medical condition . . . are

15
entitled to the full and equal accommodations, advantages, facilities, privileges, or

16
services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.

17
Thus, the Unruh Act "firmly established the right of all persons to nondiscriminatory

18
treatment by establishments that engage in business transactions with the public."

19
*Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 U.S. Dist. LEXIS 99927, at

20
*16 (N.D. Cal. Sept. 13, 2010) (quoting *Warfield v. Peninsula Golf & Country Club*, 896

21
P.2d 776, 790 (Cal. 1995)).  The Unruh Act, however, "has been limited to cases 'where

22
the plaintiff was in a relationship with the offending organization similar to that of the

23
customer in the customer-proprietor relationship.'" *Delta Sav. Bank v. United States*, 265

24
F.3d 1017, 1025 (9th Cir. 2001) (quoting *Strother v. S. Cal. Permanente Med. Group*, 79

25
F.3d 859, 873–74 (9th Cir. 1996)).  A plaintiff alleging a violation of the Unruh Act must

26
show the following:

27

28

> (1) [plaintiff] was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [plaintiff's] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm.

*Wilkins-Jones*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) (quoting *Johnson v. Beahm*, No. 2:11-cv-294-MCE-JFM, 2011 U.S. Dist. LEXIS 129341, at *10–11 (E.D. Cal. Nov. 7, 2011)).

Plaintiffs' argument that CoreCivic, a private operator of federal detention centers, qualifies as a business establishment under the Unruh Act is unpersuasive. In support of this argument, Plaintiffs cite a single nonbinding case allowing an Unruh Act claim to proceed against a private corporation that contracted with a county "to provide assessments of incoming prisoners and medical care to inmates at [the jail]." *See* Doc. No. 23 at 24 (citing *Wilkins-Jones*, 859 F. Supp. 2d at 1049). However, in allowing the Unruh Act claim to proceed, the *Wilkins-Jones* court emphasized that the private contractor at bar was "qualitatively different from a correctional facility itself." *Wilkins-Jones*, 859 F. Supp. at 1049. By Plaintiffs' own allegations, CoreCivic is "a private *operator* of correctional facilities," not merely a private contractor running a discrete medical subunit within OTMD. FAC ¶ 30 (emphasis added). *Wilkins-Jones* is therefore distinguishable from the instant case. Moreover, binding Ninth Circuit precedent suggests that, in determining whether an organization qualifies as a "business establishment" under the Unruh Act, the focus of the inquiry must be the relationship between plaintiff and defendant, not the relationship between defendant and other non-parties. *See Delta Sav. Bank*, 265 F.3d at 1025 (emphasis added) (quoting *Strother*, 79 F.3d at 873–74) ("The Unruh Act . . . has been limited to cases 'where *the plaintiff was in a relationship with the offending organization* similar to that of the customer in the customer-proprietor relationship.'"). Finally, although the Court recognizes that CoreCivic is not a state jail or prison, the Court notes that other courts have consistently

held that state jails and prisons are not "business establishments" under the Unruh Act. *See, e.g.*, *Crisp v. Wasco State Prison*, No. 1:13-cv-01899-SKO (PC), 2015 U.S. Dist. LEXIS 71317, at *15 (E.D. Cal. June 2, 2015); *Taormina v. Cal. Dep't of Corrs.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996) ("[A] prison does not qualify as a "business" because prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or gain.  Rather, they are incarcerated by the state because of crimes which they have committed.").  This further undercuts Plaintiffs' argument.  Absent legislation or clear interpretation from the Ninth Circuit, the Court cannot embrace Plaintiffs' novel interpretation of the Unruh Act.

Accordingly, the Court finds that Plaintiffs fail to adequately plead claim under the Unruh Act and therefore **GRANTS** Defendants' motion and **DISMISSES** Claim 5.

### c.    Rehabilitation Act (Claim 6)

Plaintiffs' sixth cause of action is for violation of the Rehabilitation Act against CoreCivic.  FAC ¶¶ 164–76.  Defendants argue the claim should be dismissed against CoreCivic because Plaintiffs have not adequately alleged that CoreCivic receives "federal financial assistance" and because Mejia's rights under the Rehabilitation Act were not violated.  Doc. No. 17 at 26–28.

The Rehabilitation Act of 1973 ("Section 504") prohibits discrimination on the basis of disability, providing that

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . .

29 U.S.C. §794(a).  To state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. County of Kitsap*,

260 F.3d 1124, 1135 (9th Cir. 2001).

Plaintiffs sufficiently plead the first two elements.  First, Plaintiffs adequately allege that Mejia was disabled for purposes of the Rehabilitation Act because his right foot had been amputated and he suffered from diabetes, among other medical impairments.  FAC ¶ 168; *see, e.g.*, *Alonso-Prieto v. Pierce*, No. 1:11-cv-00024-MJS (PC), 2012 U.S. Dist. LEXIS 162312, at *24 (E.D. Cal. Nov. 10, 2012) ("Diabetes qualifies as a disability under the ADA.").  Second, Plaintiffs allege that "Defendant CoreCivic failed to accommodate [Mejia] with the services and programs available to critical care patients" and that "[t]here were services readily available to Carlos Escobar, which was a placement in a hospital or a unit within the facility where health care was available."  FAC ¶ 173.

Plaintiffs fail, however, to adequately plead the third element because they do not allege that the failure to provide Mejia with placement in a hospital or unit where health care was available occurred "solely by reason" of his disability.  *See Duvall*, 260 F.3d at 1135.  Plaintiffs also fail to plead the fourth element.  To constitute "federal financial assistance" for the purposes of the Rehabilitation Act, payments to CoreCivic must involve a subsidy.  *See Morales-Alfaro v. United States Dep't of Homeland Sec.*, No. 20cv82-LAB (BGS), 2021 U.S. Dist. LEXIS 50850, at *16–17 (S.D. Cal. Mar. 17, 2021) (additional citations omitted) (citing *Hingson v. Pac. Southwest Airlines*, 743 F.2d 1408, 1414 (9th Cir. 1984)) ("While CoreCivic receives compensation under contracts, such payments do not constitute 'federal financial assistance' for purposes of § 794 unless they involve a subsidy.").  Here, Plaintiffs allege only that "Defendant CoreCivic is a program that received federal financial assistance as defined in 29 U.S.C. § 794(b)[,]" FAC ¶ 165, but provide no facts raising an inference that CoreCivic receives a subsidy.  This is insufficient to establish a plausible Rehabilitation Act claim.  *See Youngers v. Management & Training Corp.*, No. 20-465 JAP/JHR, 2021 U.S. Dist. LEXIS 75296, at *9–10 (D.N.M. Apr. 19, 2021) ("If the Court accepts [ ] threadbare allegations . . . it would amount to allowing a plaintiff to always assert a plausible Rehabilitation Act claim

under the *Twombly/Iqbal* test by merely pleading a valid federal contract. The standard demands more.").

Moreover, Plaintiffs' argument that the Rehabilitation Act applies to Defendants even if CoreCivic does not receive federal financial assistance is unavailing. Plaintiffs argue that the phrase "program or activity conducted by any Executive agency" in the Rehabilitation Act, 29 U.S.C. § 794(a), encompasses private operators of correctional facilities like CoreCivic. Doc. No. 23 at 27–29. However, Plaintiffs cite no cases in support of such an expansive reading of the phrase "program or activity conducted by any Executive agency[,]" and the Court is unaware of any cases that support this reading. *See id.* at 27–29. "Only a federal agency or a private entity receiving funds from the federal government can be liable under the Rehabilitation Act." *West v. Palo Alto Hous. Corp.*, No. 17-CV-00238-LHKWest, 2019 U.S. Dist. LEXIS 103665, at *68 (N.D. Cal. June 20, 2019) (citing *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986)). By Plaintiffs' own account, CoreCivic is plainly not a federal agency, and so cannot qualify under this language. *See* FAC ¶ 30 (alleging that CoreCivic is "a private operator of correctional facilities").

Accordingly, the Court finds that Plaintiffs fail to adequately plead claim under the Rehabilitation Act and therefore **GRANTS** Defendants' motion and **DISMISSES** Claim 6. *See Knappenberger*, 566 F.3d at 942.

> 2. *Individual Claim—Wrongful Death (Claim 3)*

As above, only Individual Plaintiffs can bring a wrongful death claim (Claim 3) as Mejia's heirs. *See Quiroz*, 140 Cal. App. 4th at 1263. "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz*, 140 Cal. App. 4th at 1263 (citations omitted).

Plaintiffs allege that Defendants committed wrongful acts that caused the death of Mejia. FAC ¶ 143. Specifically, Plaintiffs allege that Defendants' decisions not to follow CDC guidelines, as described in Section IV.C.1.a above, was a substantial factor

in causing Mejia's death.  *See id.* ¶ 144.  Plaintiffs further allege that the wrongful acts resulted in economic losses, "destroy[ing] Maribel and Rosa Escobar's relationship with their brother."  *Id.* ¶ 148.  The FAC, however, contains no factual allegations regarding the impact of Defendants' actions on Juan.  *See id.*

Accordingly, the Court finds that Plaintiffs Maribel and Rosa adequately plead a wrongful death claim upon which relief can be granted, and therefore the Court **DENIES** Defendants' motion to dismiss Claim 3 with respect to Plaintiffs Maribel and Rosa.  The Court further finds that Plaintiff Juan does not adequately plead a wrongful death claim and therefore **GRANT**S Defendants' motion and **DISMISSES** Claim 3 with respect to Juan.  *See Knappenberger*, 566 F.3d at 942.

### 3.  Punitive Damages

Defendants also argue, generally, that all claims for punitive damages should be dismissed.  *See* Doc. No. 17 at 29–30.  However, a motion to dismiss under Rule 12(b)(6) is not the proper vehicle for this argument.  *See Elias v. Navasartian*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 U.S. Dist. LEXIS 23229, at *9 (E.D. Cal. Feb. 17, 2017) ("Recent court decisions have held that because a prayer for relief is a remedy and not a claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to challenge a plaintiff's prayer for punitive damages, because Rule 12(b)(6) only countenances dismissal for failure to state a claim."), *report and recommendation adopted*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 U.S. Dist. LEXIS 35673 (E.D. Cal. Mar. 13, 2017).  The Court therefore **DENIES** Defendants' motion on this basis.

### 4.  Doe Defendants

Finally, Defendants argue that Does 1–50 should be dismissed because the FAC is devoid of references to Doe defendants beyond a single allegation that a Doe defendant told detention officers they could not wear a face mask while working in the kitchen.  *See* Doc. No. 17 at 30–31.  The Court agrees.

Generally, the use of Doe defendants is not a favored practice in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citing *Wiltsie v. Cal. Dep't of Corrs.*, 406 F.2d 515, 518 (9th Cir. 1968)). However, where

> the identity of alleged defendants [is] not [] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Id.* A complaint must set forth a minimum factual and legal basis sufficient to give each Doe defendant fair notice of the allegations against him or her; otherwise, the claims against those defendants must be dismissed. *McGruder v. County of Los Angeles*, No. CV 17-7024-CJC (JPR), 2017 U.S. Dist. LEXIS 224089, at *11 (C.D. Cal. Oct. 12, 2017) (citing *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)). The Court may dismiss defendants who have not been served within 90 days of filing the complaint absent a showing of good cause for the failure. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

Given the paucity of information alleged in the FAC regarding Doe defendants, Plaintiffs have not put Defendants on "fair notice" of the claims against Doe defendants. Moreover, although the complaint was filed well over 90 days ago, Plaintiffs have not served the Doe defendants as Plaintiffs must do under Federal Rule of Civil Procedure 4(m) absent a showing of good cause for the failure to serve. The Court therefore **GRANTS** Defendants' motion to dismiss on this basis. *See Knappenberger*, 566 F.3d at 942. Should Plaintiffs file a Second Amended Complaint and choose to include Doe defendants, Plaintiffs must identify how each Doe defendant is alleged to have violated Plaintiffs' rights.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.  In particular, the Court **GRANTS** the motion and **DISMISSES** Claims 1, 2, 3, 4, 5, and 6 as described above.

In their September 17, 2021 status report, Plaintiffs state that they intend to amend their Complaint to add the United States as a defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, and anticipate doing so on or before October 8, 2021.  *See* Doc. No. 27 at 2.  Accordingly, the Court **DIRECTS** Plaintiffs to file an amended complaint curing all deficiencies noted herein by **October 8, 2021**.

**IT IS SO ORDERED**.

Dated:  September 27, 2021

HON. MICHAEL M. ANELLO
United States District Judge