# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF CARLOS ESCOBAR MEJIA et al, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | CASE NO. 20-cv-2454-L-KSC <br><br> **ORDER GRANTING UNITED STATES OF AMERICA'S MOTION TO DISMISS OR STRIKE SECOND AMENDED COMPLAINT [ECF NO. 47.]** |

Pending before the Court is Defendant United States of America's Motion to Dismiss the Third Cause of Action contained in Plaintiff's Second Amended Complaint ("SAC"). (Motion [ECF No. 47.]) Plaintiffs oppose. The Court decides the matter on the papers submitted and without oral argument. See Civ.

L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Defendants' Motion

I. FACTUAL BACKGROUND

Decedent Carlos Escobar Mejia (" Escobar"), originally from El Salvador, lived in the United States with his sisters for over 40 years. (SAC ¶¶ 33-34.) In January 2020, Escobar was detained by ICE after Border Patrol stopped him in Chula Vista (*Id*. at ¶ 37.) Escobar had criminal convictions, including a DUI, that were 30 years old. (*Id*. at ¶ 36.) Escobar was in ICE Custody until his death on May 6, 2020, at age 57, although no criminal charges were pending against him. (*Id*. at ¶ 29, 37-38.) Escobar had been waiting to appear before an immigration judge to resolve an issue related to his immigration status. (*Id*. at ¶ 39.) Escobar was vulnerable to COVID-19; he suffered from diabetes, his foot had been amputated due to complications from diabetes and he suffered high blood pressure and heart problems. (*Id*. at ¶¶ 40-41.)

Escobar became infected with COVID-19 while in custody at the Otay Mesa Detention Center, an immigration detention center owned and operated by Defendant CoreCivic. (*Id*. at ¶¶ 39, 43, 122.) CoreCivic is a private operator of correctional facilities with contracts for services with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Marshals Service ("USMS"). (*Id*. at ¶ 42.) Defendant Archambeault was the San Diego Field Office Director for ICE Enforcement and Removal Operations ("ERO"), an agency within the U.S. Department of Homeland Security. (*Id*. at ¶ 18.) Defendant Archambeault was charged with having legal custody of Escobar, an ICE detainee. (*Id*.) Defendant Dobson was the Otay Mesa Detention Center officer in charge of immigration detention operations at OMDC, and was a legal custodian of Escobar. (*Id*. at ¶ 19.) Defendants Archambeault and Dobson were responsible for overseeing the operations of CoreCivic, in particular the provision of medical care to the detainees at the OMDC. (*Id*. at ¶ 20.) The federal government's ICE Health

Service Corps is solely responsible for contracting, staffing and oversight of any medical and mental health services provided at Otay Mesa. (*Id*. at ¶ 127.)

Around April 17, 2020, Escobar started showing symptoms of COVID-19, vomiting and feeling gravely ill. (*Id*. at ¶ 122). Instead of being taken to the hospital, Escobar was taken to a designated area with other detainees diagnosed with COVID-19. (*Id*. at ¶ 123.) Escobar repeatedly complained about his symptoms and detainees in the same unit as Escobar would wheel him to a nurse to seek help for him. (*Id*. at ¶ 124.) Escobar was only given ibuprofen to treat his symptoms. (*Id*. at ¶ 131.)

By Monday April 20, 2020 there were 18 migrant detainees in OMDC who had tested positive for COVID 19. (*Id*. at ¶ 148.) Just four days later, on April 24th, there were 111 detainees at OMDC who were positive for COVID-19, an increase of 517 percent. (*Id*.)

On April 24, 2020, Escobar was sent to Paradise Valley Hospital in National City and placed on a ventilator. (*Id*. at ¶ 136.) By the time defendant transported him to the hospital Escobar was struggling to breathe. (*Id*.) The U.S. District Court had ordered ICE to review cases of medically vulnerable persons for release and Escobar was on the list but by the time of the court hearing on May 4, 2020, Escobar was already in grave medical condition (*Id*. ¶¶ 138-39.) During the May 4th hearing, the government admitted it was probably too late to save Escobar. (*Id*. at ¶ 139). On May 6, Escobar died. (*Id*. at ¶ 140.)

II.   PROCEDURAL BACKGROUND

On December 16, 2020, Plaintiffs filed a Complaint alleging seven causes of action following Escobar's death while in federal custody: (1) negligence against CoreCivic, LaRose, Roemmich, and Does 1–50; (2) intentional infliction of emotional distress against CoreCivic, LaRose, Roemmich, and Does 1–50; (3) wrongful death under California Code of Civil Procedure § 377.60 against CoreCivic, LaRose, Roemmich, and Does 1–50; (4) violation of California's

Bane Act, California Civil Code § 52.1, against CoreCivic, LaRose, Roemmich, and Does 1–50; (5) violation of California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51, against CoreCivic; (6) violation of the Rehabilitation Act, 29 U.S.C. § 794(a), against CoreCivic; and (7) violation of Mejia's constitutional right to adequate medical care against Archambeault and Dobson pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Complaint [ECF No. 1.])

On April 8, 2021, Plaintiffs filed a First Amended Complaint. (FAC [ECF No. 15.]) On April 22, 2021, Defendant Corecivic filed a Motion to Dismiss Plaintiff's First Amended Complaint. (MTD [ECF No. 17.]) On September 27, 2021, the Court granted in part and denied in part Defendant's motion to dismiss, dismissing all claims except for the wrongful death claim asserted by individual Plaintiffs Rosa and Maribel Escobar, and the punitive damages claim. (Order at 19 [ECF No. 28.]) The Court further dismissed all claims asserted against Defendant Does 1-50, stating "[s]hould Plaintiffs file a Second Amended Complaint and choose to include Doe Defendants, Plaintiffs must identify how each Doe defendant is alleged to have violated Plaintiff's rights." (*Id.* at 20.)

On October 8, 2021, Plaintiffs filed a Second Amended Complaint limited to four claims: negligence, wrongful death, violations of the Bane Act, and Bivens: Deliberate Indifference. (SAC [ECF No. 29.]) Plaintiffs also included claims against Does 1-7.

On December 17, 2021, Defendant United States of America filed the current Motion to Dismiss Plaintiff's Third Cause of Action in the Second Amended Complaint seeking dismissal for lack of subject matter jurisdiction of Plaintiff's Bane Act claim to the extent it is premised on violations of the United States Constitution. The Motion further requests that Plaintiff's prayer for attorneys' fees pursuant to the Bane Act be dismissed or stricken from the Second

Amended Complaint. For the following reasons, the Court GRANTS Defendant's request.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of an action from federal court for lack of subject matter jurisdiction. Fed.R.Civ.Pro. 12(b)(1). A federal court has subject matter jurisdiction over an action that arises under federal law. *See* 28 U.S.C. §§ 1331. It is the plaintiff's burden to demonstrate the district court's jurisdiction over defendants. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1128-29 (9th Cir. 2003).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### IV. DISCUSSION

Defendant argues that Plaintiff's Bane Act claim must be dismissed to the extent it alleges a violation of the federal Constitution because the United States has not waived sovereign immunity for damages claims arising out of the federal

Constitutional. (Mot. at 2). In addition, Defendant contends that the demand for attorneys' fees must be dismissed or stricken from the Prayer for Relief based on a lack of subject matter jurisdiction because the United States has not waived sovereign immunity permitting the recovery of attorneys' fees under the Federal Tort Claims Act "FTCA." (*Id*.)

In response, Plaintiff argues that the Bane Act claim does not rely solely on a federal constitutional tort, but instead Plaintiff seeks to hold the Government liable for violations of California law, therefore the claim should not be dismissed. (Oppo. at 9). Specifically, Plaintiff claims that "Archambeault, Dobson and Roes are liable under the Federal Tort Claims Act, which permits plaintiffs to bring lawsuits against the United States for money damages for injury or death caused by the federal employees' wrongful acts." (*Id*. at 10). Plaintiff has no objection to striking the claim for attorneys' fees in the Prayer for Relief cause of action from the Second Amended Complaint. (*Id*.)

The Second Amended Complaint alleges three claims against the United States pursuant to the ("FTCA"), including a Bane Act claim. California's Bane Act prohibits private persons and persons acting under color of law from interfering by "threat, intimidation, or coercion" with another individual's "exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. A claim under the Bane Act may be pursued under the FTCA. *Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010). While the "FTCA allows a Bane Act claim predicated on the violation of a federal statute . . . it did not suggest that the FTCA waiver extends to Bane Act claims deriving from [federal] constitutional violations." *Lewis v. Mossbrooks*, 788 Fed.Appx. 455, 460 (9th Cir. Oct. 4, 2019).

The FTCA waives sovereign immunity for certain torts committed by federal employees only "where the United States, if a private person, would be

liable ... in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The United States, as sovereign, is immune from suit save as it consents to be sued and has not waived its sovereign immunity for actions seeking damages for federal constitutional tort claims. See *FDIC v. Meyer*, 510 U.S. 471, 475-79 (1994) ("the United States has not rendered itself liable [under the FTCA] for constitutional tort claims"); *Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir.1984) (holding plaintiff's damages claim for violation of his Fourth Amendment rights against the United States was barred by sovereign immunity).

In the Bane Act claim, Plaintiff alleges that Defendants' violated Escobar's rights by refusing to provide medical care and refusing to transport him to the hospital despite his degrading condition. (*Id*. at ¶¶ 218-220) "This interference with Mr. Escobar's rights was perpetrated in violation of California Civil Code §52.1 and Mr. Escobar's right to be free from denial of due process, right to bodily integrity and human treatment, and retaliatory animus under the California and Federal Constitutions." (*Id*. at ¶ 221)

To the extent this allegation asserts a federal constitutional tort claim against the United States, the claim is barred under the Bane Act because the United States has not waived sovereign immunity under the FTCA. *See Mossbrooks*, 788 Fed.Appx. at 460. However, Plaintiffs claim also alleges failure to provide or facilitate medical care under California Civil Code § 52.1 and the California Constitution against other Defendants, which is an independent basis for relief that may be adjudicated under the Bane Act. *See* Cal.Civ. Code §52.1; *Bender v. County of Los Angeles*, 217 Cal.App. 4th 968, 977 (July 9, 2013). Therefore, the Court lacks subject matter jurisdiction over the Bane Act claim to the extent it raises federal Constitutional claims against the United States. *See* Fed. R. Civ. Proc. 12(b)(1); 28 U.S.C. § 1331.

//

### V. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and the Bane Act claim is dismissed without prejudice insofar as it is premised on violations of the United States Constitution against the United States. The Plaintiff's demand for attorneys' fees under the Bane Act in the Prayer for Relief, is **STRICKEN** in light of Plaintiff's non-opposition to Defendant's request.

**IT IS SO ORDERED**

Dated:  August 3, 2022

_____
Hon. M. James Lorenz
United States District Judge