**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE ESTATE OF CARLOS ESCOBAR MEJIA et al,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | CASE NO. 20-cv-2454-L-KSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CORECIVIC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 34.]** |

Pending before the Court is Defendant Corecivic's Partial Motion to Dismiss Plaintiff's Second Amended Complaint. (Motion [ECF No. 34.]) Plaintiffs oppose. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court GRANTS in part and DENIES in part Defendant's Motion

I.  FACTUAL BACKGROUND

Decedent Carlos Escobar Mejia ("Escobar"), originally from El Salvador, lived in the United States with his sisters for over 40 years. (Second Amended Complaint "SAC" ¶¶ 33-34.) In January 2020, Escobar was detained by ICE after Border Patrol stopped him in Chula Vista (*Id*. at ¶ 37.)  Escobar had criminal convictions, including a DUI, that were 30 years old. (*Id*. at ¶ 36.) Escobar was in ICE Custody until his death on May 6, 2020, at age 57, although no criminal charges were pending against him. (*Id*. at ¶ 29, 37-38.) Escobar had been waiting to appear before an immigration judge to resolve an issue related to his immigration status. (*Id*. at ¶ 39.) Escobar was vulnerable to COVID-19; he suffered from diabetes, his foot had been amputated due to complications from diabetes and he suffered high blood pressure and heart problems. (*Id*. at ¶¶ 40-41.)

Escobar became infected with COVID-19 while in custody at the Otay Mesa Detention Center ("OMDC"), an immigration detention center owned and operated by Defendant CoreCivic. (*Id*. at ¶¶ 39, 43, 122.) CoreCivic is a private operator of correctional facilities with contracts for services with U.S. Immigration and Customs Enforcement ("ICE") and U.S. Marshals Service ("USMS"). (*Id*. at ¶ 42.) Defendant Archambeault was the San Diego Field Office Director for ICE Enforcement and Removal Operations ("ERO"), an agency within the U.S. Department of Homeland Security. (*Id*. at ¶ 18.) Defendant Archambeault was charged with having legal custody of Escobar, an ICE detainee. (*Id*.) Defendant Dobson was the Otay Mesa Detention Center officer in charge of immigration detention operations at OMDC, and was a legal custodian of Escobar. (*Id*. at ¶ 19.) Defendants Archambeault and Dobson were responsible for overseeing the operations of CoreCivic, in particular the provision of medical care to the detainees at the OMDC. (*Id*. at ¶ 20.) The federal government's ICE

Health Service Corps is solely responsible for contracting, staffing and oversight of any medical and mental health services provided at Otay Mesa. (*Id*. at ¶ 127.)

Around April 17, 2020, Escobar started showing symptoms of COVID-19, vomiting and feeling extremely ill. (*Id*. at ¶ 122). Instead of being taken to the hospital, Escobar was taken to a designated area with other detainees diagnosed with COVID-19. (*Id*. at ¶ 123.) Escobar repeatedly complained about his symptoms and detainees in the same unit as Escobar would wheel him to a nurse to seek help for him. (*Id*. at ¶ 124.) Escobar was only given ibuprofen to treat his symptoms. (*Id*. at ¶ 131.)

By Monday April 20, 2020 there were 18 migrant detainees in OMDC who had tested positive for COVID 19. (*Id*. at ¶ 148.) Just four days later, on April 24th, there were 111 detainees at OMDC who were positive for COVID-19, an increase of 517 percent. (*Id*.)

On April 24, 2020, Escobar was sent to Paradise Valley Hospital in National City and placed on a ventilator. (*Id*. at ¶ 136.) By the time defendant transported him to the hospital Escobar was struggling to breathe. (*Id*.) The U.S. District Court had ordered ICE to review cases of medically vulnerable persons for release and Escobar was on the list. (*Id*. at ¶ 138.) By the time of the court hearing on May 4, 2020, Escobar was already in grave medical condition (*Id*. ¶¶ 138-39.) During the May 4th hearing, the government admitted it was probably too late to save Escobar. (*Id*. at ¶ 139.) On May 6, Mr. Escobar died. (*Id*. at ¶ 140.)

II.   PROCEDURAL BACKGROUND

On December 16, 2020, Plaintiffs filed a Complaint alleging seven causes of action following Ecobar's death while in federal custody: (1) negligence against CoreCivic, LaRose, Roemmich, and Does 1–50; (2) intentional infliction of emotional distress against CoreCivic, LaRose, Roemmich, and Does 1–50; (3) wrongful death under California Code of Civil Procedure § 377.60 against

CoreCivic, LaRose, Roemmich, and Does 1–50; (4) violation of California's Bane Act, California Civil Code § 52.1, against CoreCivic, LaRose, Roemmich, and Does 1–50; (5) violation of California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51, against CoreCivic; (6) violation of the Rehabilitation Act, 29 U.S.C. § 794(a), against CoreCivic; and (7) violation of Mejia's constitutional right to adequate medical care against Archambeault and Dobson pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Complaint [ECF No. 1.])

On April 8, 2021, Plaintiffs filed a First Amended Complaint. (FAC [ECF No. 15.]) On April 22, 2021, Defendant Corecivic filed a Motion to Dismiss Plaintiff's First Amended Complaint. (MTD [ECF No. 17.]) On September 27, 2021, the Court granted in part and denied in part Defendant's motion to dismiss, dismissing all claims except for the wrongful death claim asserted by individual Plaintiffs Rosa and Maribel Escobar, and the punitive damages claim. (Order at 19 [ECF No. 28.]) The Court further dismissed all claims asserted against Defendants Does 1-50, stating "[s]hould Plaintffs file a Second Amended Complaint and choose to include Doe Defendants, Plaintiffs must identify how each Doe defendant is alleged to have violated Plaintiffs' rights." (*Id*. at 20.)

On October 8, 2021, Plaintiffs filed a Second Amended Complaint limited to four claims: negligence, wrongful death, violations of the Bane Act, and *Bivens*: Deliberate Indifference. (SAC [ECF No. 29.]) Plaintiffs also included claims against Does 1-7.

On October 20, 2021, Defendant Corecivic of Tennessee, LLC, filed the current Partial Motion to Dismiss Plaintiff's Second Amended Complaint seeking dismissal of Plaintiff's negligent supervision and negligent training theories of liability contained within the negligence claim. The Motion further requests dismissal of the Doe 1-7 Defendants.

III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

IV. DISCUSSION

Defendant argues that the SAC adds negligent supervision and negligent training theories of liability to Plaintiff's negligence claim, but Plaintiff has not pled sufficient facts to support these claims. (Mot. at 5). Specifically, Defendant

claims that Plaintiff has not alleged that CoreCivic, La Rose, Roemmich, or any other Defendants knew, or failed to use reasonable care to discover, that any of its employees or supervisors at OMDC was unfit to perform specific tasks as required to advance a negligent supervision claims. (*Id*. at 5.) Defendant further argues that Plaintiff has failed to allege any causal connection between the CoreCivic Defendant's training and the harm to Escobar, as required to pursue a negligent training claim.  (*Id*. at 7) In addition, Defendant contends that the claims against Defendant Does 1-7 should be dismissed with prejudice for Plaintiff's failure to identify how each Doe Defendant is alleged to have violated Plaintiff's rights. (*Id*. at 8).

In response, Plaintiff argues that it has sufficiently alleged facts supporting its contention that Defendants including CoreCivic, LaRose, Roemmich and others did not properly supervise its employees or adequately train employees on infectious disease protocols. (Oppo. at 12). Further, Plaintiff contends that specific facts have been alleged to place the Doe Defendants on notice, including that they instituted and or facilitated unhygienic and dangerous practices which caused rampant infections of COVID throughout OMDC. (*Id*. at 14-15).

### A. NEGLIGENT SUPERVISION

"An employer can be held liable for negligent supervision if it knows or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness." *Alexander v. Cmty. Hosp. of Long Beach,* 259 Cal. Rptr. 3d 340, 356 (Cal. Ct. App. 2020); *see also Federico v. Superior Ct. (Jenry G.)*, 69 Cal. Rptr. 2d 370, 375 (Cal. Ct. App. 1997) *as modified on denial of reh'g* (Dec. 8, 1997) ("[L]iability for [negligent supervision] can be imposed only when the employer knows, or should know, that the employee, because of past behavior or other factors, is unfit for the specific tasks to be performed"). Liability for negligent supervision of an employee is one of direct liability for negligence, not vicarious liability. *Delfino v. Agilent Techs., Inc.*, 52 Cal. Rptr. 3d

376, 397 (Cal. Ct. App. 2006). "[T]here can be no liability for negligent supervision 'in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised.'" *Juarez v. Boy Scouts of America, Inc*. 81 Cal.App.4th 377, 395 (Cal. Ct.App. 2000)(*quoting Noble v. Sears, Roebuck & Co.*, 33 Cal.App 3d 654, 66 (Cal.Ct.App.1973).

In the SAC, Plaintiff alleges that Defendants LaRose, Roemmich, and the Doe Defendants "were aware that the medical staff under their supervision had failed to treat a critically ill patient" in the past who later died. (SAC at ¶ 191). According to the allegation, that detainee had "developed shortness of breath, respiratory distress and wheezing but was denied any medical care" and when he was "finally taken to a hospital, he was placed on mechanical ventilation and diagnosed with pneumomediastinum with extensive subcutaneous emphysema, hypoxemia, acute kidney injury, healthcare associate pneumonia, new onset of diabetes and hypokalemia." (*Id*. at ¶ 190)

Here, the Roe Defendants are medical providers or administrators who failed to provide medical care to Escobar and Plaintiff claims that "Archambeault and Dobson are liable for their negligent failure to supervise and train these subordinates when they were aware of the prior complaints that detainees were not receiving adequate medical care." ((SAC at ¶ 189-192).

In addition, Plaintiff alleges that:

> Defendants had an obligation to supervise and train their nursing and medical staff to understand that they had to respond to request for sick call for a deadly disease within a reasonable period of time. As a result of their failure to adhere to their own self-imposed policy, the Roe defendant doctors and nurses failed to properly see Mr. Escobar based on the acuity of his problem, which was urgent. As a result of the failure to supervise and train as required by ICE's own policies, the subordinate medical care providers provided no sick calls to a patient dying of COVID.

(*Id*. at ¶ 199).

For purposes of the present motion, the above assertions sufficiently allege that Defendants LaRose, Roemmich and Doe Defendants knew or had reason to believe that the medical staff Roe Defendants "could not be trusted to act properly without being supervised" in light of the allegations regarding a prior detainee's death and failure to follow sick call procedures. *Juarez* (2000) 81 Cal.App.4th 377 at 395. In addition, Plaintiff has sufficiently alleged that Defendants Archambeault, Dobson, and CoreCivic respectively, knew, or should have known, that LaRose, Roemmich, and the Doe Defendants were unfit in light of prior complaints about inadequate medical care for detainees. These allegations as pled in the SAC provide a short, plain statement of the "underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. In light of the above, Defendant's motion to dismiss Plaintiff's negligent supervision claims is denied.

B. NEGLIGENT TRAINING

"A plaintiff alleging negligent training under California law must show that the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F.Supp. 2d 1187, 1208 (E.D. Cal. 2009)(citing *State Farm Fire & Casualty Co. v. Keenan*, 216 Cal. Rptr. 318, 331 (Cal.Ct. App.1985). The elements of a negligence action and negligent training action are duty, breach of duty, proximate cause, and damages. *Scott v. C.R. Bard, Inc.*, 231 Cal . App. 4th 763, 775 (2014)

In the Negligence claim of the Second Amended Complaint, Plaintiff alleges that "CoreCivic, LaRose, and Roemmich had a duty to properly train their subordinates to ensure they could carry out their duties properly to avoid causing injury to the decedent." (SAC at ¶ 186).  Plaintiff claims that CoreCivic only

provided six weeks of training for its employees which was focused on self-defense and correctional techniques, with no training for Detention Officers on how to handle infectious diseases. (SAC at ¶¶55, 58). There was brief on-the-job training for housing unit employees which involved "shadowing" a housing unit officer, but there was no requirement that officers pass an exam or otherwise demonstrate competence, according to Plaintiffs. (*Id*. at ¶ 55). Plaintiffs argue that all Defendants had a duty to adhere to the mandate of the ICE Enforcement and Removal Operation Pandemic Response Requirements("ERO PPR") and the National Detention Standards 4.3 Medical Care, which required CoreCivic to notify ERO Field and Medical Office Director of individuals at high-risk of serious illness from COVID-19 in a timely manner, and protocols for Sick Calls. (*Id*. at ¶ 187, 199).  However, Plaintiff asserts that due to "the failure to supervise and train as required by ICE's own policies, the subordinate medical care providers provided no sick calls to a patient dying of COVID."  (*Id*. at ¶ 199).

        These allegations in the SAC do not include specific details regarding how allegedly negligent training was the proximate cause of Escobar's injury and death.  Instead, the allegations presuppose that the purported failure of the medical staff to provide a timely sick call, among other failures to provide medical care, necessarily means that the training was negligent as to those procedures. But this is insufficient to allege a causal connection between allegedly negligent training and Escobar's illness and death. *Scott*, 231 Cal.App. 4th at 775 Plaintiffs attempt to bolster the claim in the SAC with the following allegations in the Reply to this motion:

> Defendants and its Doe officials trained their staff that they could not wear a face mask because it would intimidate and scare the detainees. CoreCivic Defendants and Doe officials trained their employees to refuse to give detainees masks when asked for. CoreCivic Defendants and Doe officials trained employees to threaten to pepper spray detainees who persisted in their pleas for masks. CoreCivic

> Defendants and Doe officials trained their employees to pack housing units with more than 100 detainees, rather than social distance them.
> . . .
> The causal nexus is clear on its face. CoreCivic actively trained employees to refrain from engaging in basic protective measures that would have protected vulnerable detainees, like Mr. Escobar, from COVID-19 and the consequences.

(Opposition at 13).

However, these allegations are not contained in the operative complaint, and therefore, did not put Defendants sufficiently on notice to comply with pleading requirements. *See Twombly*, 550 U.S. at 555. For the foregoing reasons, Defendants' motion to dismiss Plaintiff's negligent training claim is granted.

### C. DOES 1

Defendant argues that the seven Doe Defendants should be dismissed because Plaintiffs failed to assert how each Doe Defendant is alleged to have violated Escobar's rights, and therefore, Defendants were not put on notice. (Mot. at 8, Reply at 6).  This is particularly troubling according to Defendant in light of the Court's prior Order directing Plaintiff to include specific allegations against each Doe Defendant if the Complaint was amended.

In response, Plaintiffs claim that Does 1-7 instituted or facilitated "unhygienic and dangerous practices, causing rampant infections of COVID through OMDC."  (Oppo. at 15).  Moreover, Plaintiffs contend the SAC includes allegations that Doe Defendants failed to transmit required information regarding Escobar's vulnerable medical status or his critical medical condition to ICE as required. (SAC at ¶ 17.) Plaintiffs further assert that the SAC contains specific allegations as to Doe Defendant's with regard to mask usage, procedures for handling sick detainees, and the failure to transport him despite his grave illness.

"It is not enough, of course, simply to name 'Doe' defendants. Rather, the complaint must allege that they were responsible in some way for the acts complained of." *Winding Creek v. McGlashan*, 44 Cal.App.4th 933, 941 (1996).

Where the "Complaint fails to set forth a minimum factual and legal basis under Rule 8 sufficient to give each Doe Defendant fair notice of the allegations against him or her, the claims against those Defendants must be dismissed." *McGruder v. County of Los Angeles*, 2017 WL 10562967 *4 (C.D. Cal. 2017).

In its Order denying Defendants' motion to dismiss, this Court noted that the use of Doe defendants is not favored in federal court, and that Plaintiff had failed to sufficiently put each Doe Defendant on notice of the allegations against him or her.  (Order at 20 [ECF 28.]) The Court further noted that the Doe Defendants had not been served as required under the Federal Rules of Civil Procedure 4(m). As a result, the Court granted Defendants motion to dismiss as to Doe Defendants 1-50 with an admonishment that "[s]hould Plaintiffs file a Second Amended Complaint and choose to include Doe defendants, Plaintiffs must identify how each Doe defendant is alleged to have violated Plaintiffs' rights." (*Id.*)

In the Second Amended Complaint, Plaintiffs allege that Doe Defendants expressly prohibited employees from wearing masks in the housing units and other areas of the facility. (*Id*. at ¶¶ 84, 98). According to Plaintiffs, a Doe Defendant told staff that they could not wear a mask because it would intimidate the detainees and the detainees do not get masks. (*Id*. ¶ 98). Plaintiffs contend in the SAC that Does refused to issue masks to detainees without the detainees first signing a waiver of liability and threatened to pepper spray detainees who demanded masks. (*Id*. at ¶¶ 118-120). The SAC contains allegations that Doe Defendants who were charged with handling sick cards and facilitating medical care failed to respond to Escobar's sick card and request for medical care, which exacerbated the seriousness of his condition. (*Id*. at ¶ 125.) Plaintiffs claim that once Defendants were aware that Escobar was ill, Doe Defendants refused to transport him to the hospital. (*Id*. at ¶ 209.)

These allegations sufficiently allege that Doe Defendants engaged in specific acts that impacted Escobar. Some of the allegations are directed at individual Doe Defendants, while others include multiple Doe Defendants. Contrary to Defendants assertions, the fact that those allegations are lodged against more than one individual does not deprive Defendant of "fair notice" regarding the claims. Rather, the allegations are sufficient for purposes of the present motion to put the parties on notice, and for parties' to undertake investigation to determine who engaged in the conduct alleged, and when it occurred, if at all. *Starr*, 652 F.3d at 1216.

However, there is no indication that these Doe Defendants have been identified and served, as required under Federal Rule of Civil Procedure 4(m). Fed.R.Civ.P. 4(m)("If a defendant is not served within 90 days after the complaint is filed, the court - - on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.") For this reason, Defendants' motion to dismiss Doe Defendants is GRANTED without prejudice.

### V.  CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's negligent supervision claim is DENIED; Defendant's motion to dismiss Plaintiff's negligent training claim is GRANTED and the negligent training claim is dismissed without prejudice; and Defendant's motion to dismiss Doe Defendants is GRANTED without prejudice.

**IT IS SO ORDERED**

Dated:  August 5, 2022

_____
Hon. M. James Lorenz
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28